Last case this morning, case number 4170539, Ingrate O.M. for the appellant, Brian Wilson, for the athlete, David Manchin. Mr. Wilson, you may proceed. May it please the Court, Counsel. Good morning, Your Honors. I represent O.M. on behalf of the Office of the State Appellate Defender. The State has agreed that O.M.'s adjudication for criminal sexual assault should be vacated, that his sentence needs to be modified to terminate on his 21st birthday, and that some of his probationary conditions need to be stricken. As a result, there's only a couple of issues that we're here to discuss today, and I'd like to begin by discussing the 11510 argument. As we know, before a 11510 statement can be admitted, the State must establish that there are sufficient safeguards of reliability. In other words, there must be a particularized guarantee of trustworthiness. We also know, pursuant to this Court's decision in People v. Simpkins, that the State must also affirmatively establish the content of previous interviews to demonstrate that prior interviews did not compromise the reliability of the proffered statements. And with those guidelines in mind, I'd like to talk about the facts of this case just briefly. We have an initial statement that was allegedly given by K.B., in this case, to his stepsister. The stepsister went and got K.B.'s mother and told K.B.'s mother that K.B. had said that in the bathroom, O.M. had asked K.B. to put K.B.'s penis in O.M.'s butt. As a result, the mother went and talked to K.B. Now, what's significant about that first statement is K.B. never repeats those things. He never says that any act occurred in the bathroom. He never repeats to anybody that any act or that O.M. asked him to perform anal sex on him. That's never mentioned again. Instead, after an in-depth interview, or what seems like an in-depth interview, by K.B.'s mother, it lasted between 30 and 40 minutes. Part of it took place while the stepsister was present. Part of it took place while the mom was in there by herself. And part of it took place while the mom was there with her husband. She left that discussion with K.B. with an understanding that at some point on the night of the rehearsal dinner for her wedding, about two weeks prior, O.M. had driven K.B. behind a building and parked. And while they were parked, O.M. touched K.B.'s private part, performed an act of oral sex on K.B., and performed an act of anal sex. And then at some point during this discussion, that changed. There wasn't an act of anal sex. It was only attempted. And then at some point, that changed. There wasn't an attempted act of anal sex. That happened on some prior day at K.B.'s grandmother's house. Now, what's also significant about this is, as the mom is going in to talk to K.B. about this allegation, she knows that O.M. had been accused of committing or of improperly touching another person. He was not adjudicated delinquent of that. He was found not guilty of that offense. But she still carries that knowledge into her or in with her as she is questioning her son about allegations that O.M. has done something to him. That is vitally important because of this court's decision in Simpkins. Where you have this mother going in and questioning her son for a minimum of 30 to 40 minutes was her testimony. The state wholly failed to show the content of that discussion, what questions she asked of him, how she got this information from him, and failed to demonstrate that that information was reliable, given this information that she carried in here, knowing that O.M. had been accused of doing a similar thing to another child. The state didn't even try to establish reliability for any of that. And then you have, about two or three days later, K.B. was taken to a police station and spoke with an officer at the police station, and his story changed again. At the police station, he doesn't say anything about going behind a building and parking where these things happened. He said at the fairgrounds, by where the animals are, that O.M. had touched him, performed an act of oral sex, and performed an act of anal sex. Different than what he had told his mom a few days prior to that. Now again, what's significant about that is, and the state agrees, that some of the questions that Boland uses, or quite a few of the questions Boland uses to get this information out, were leading questions. Questions that essentially suggested the answer to K.B. One of them, as I was looking back through the transcript, was this whole idea of the oral sex. K.B. had told Boland that O.M. performed this act of anal sex. Again, that contradicts what he told his mother. And then Boland says, and then what did he do with your private part? Or what did he do with your private area? They had a word for it. And K.B. said, well, he placed it in his mouth at that point. You have these kind of leading questions pulling these answers out of K.B. And again, the state has agreed that they were leading. So I look at all this in tandem with the other factors that Simpkins discusses. You have whether the statement was spontaneous. We only have one spontaneous statement here. And the factor is whether the statement was spontaneous and consistent with other statements. The only spontaneous statement we have is the one that he made to his stepsister that is wholly inconsistent with any other statement he provided to anyone else. We also have the fact that there was a two-week delay in between when this act allegedly occurred and when he reported it. K.B. didn't use any terms that would be strange for an 8-year-old to know and use. He used terms like but and S-E-X, things that an 8-year-old would understand. Additionally, while there was no motive to fabricate, per se, any of these allegations against O.M., there had been an allegation that K.B. had made about being improperly touched by at least one other people and maybe two or three, including O.M. It wouldn't be out of the ordinary for an 8-year-old to get this mixed up with who did what, when, where it was done, and how it was done. So there are serious reliability problems with the entirety of the state's argument that there was a reasonable indicia of reliability here. And this is so vitally important to this case, because when they get to the adjudication, O.M.'s adjudication, K.B.'s story completely changes. He tells something completely different to the court. He tells the court that, no, I don't think my clothes even came off. No, I don't think it was either that K.B. said he didn't leave his car seat or O.M. didn't leave his car seat. So you have this different statement. I think he said, no, I didn't take my clothes off. I think he said he didn't remember when his clothes were off. You are right. I misstated that. That's my fault. You're correct. He said he didn't remember taking his clothes off. So it makes it really difficult to say, yes, I had an act. He performed an act of anal sex on me when he can't even remember if he took his clothes off or not. Now, again, the other reason that this is so important is when we get to the adjudication and the judge is considering an issue of credibility, he has K.B.'s testimony, which, again, is contrary to much of what he said during these 11510 statements, lined up against O.M.'s testimony and the testimony of O.M.'s mother. O.M. testified that none of this happened. But possibly more persuasive than that was O.M.'s mother's testimony. Her testimony was that they met at a pizza hut to get pizzas for this rehearsal dinner. K.B. got in the car with O.M. and she followed them to where this rehearsal dinner was. They traveled. It took them about 90 seconds to get from point A to point B, point B being the location of the rehearsal dinner. O.M. at the time had a broken left hand, so he's driving with his right hand. This testimony, at least in the transcript, came off as very credible. But the court relied on the 11510 statements to find that K.B., in light of the statements he had given and in light of the testimony given by his mom and his stepsister and Officer Bullen, was more credible than O.M. and his mother. I thought he indicated specifically that that respondent and his mother were not credible. That's what I'm saying. Exactly. Well, that's different than saying, well, they both are credible, but one's more credible than the other. He said not credible. Right. He said that they were completely incredible. He didn't believe either of them. But that's why the 11510 statement is so important, because when the court was weighing this credibility or determining who was credible and who wasn't, it was relying on the 11510 statement and the testimony that was given about how the 11510 statement was given when finding that K.B. was completely credible. If that 11510 statement is gone, if the testimony of Officer Bullen and K.B.'s mother and K.B.'s stepsister are no longer considered, we have a completely new case here where we have the necessity of a credibility determination between an 8-year-old who says he doesn't really remember some things about this alleged occurrence and the testimony of O.M. and O.M.'s mother, both who can testify that this didn't happen. That's why this 11510 argument is so critical to the validity of O.M.'s adjudication as to Count Two. And while when that evidence is removed from the record, it demonstrates that his adjudication really stands on improperly admitted evidence that should have never been considered by the finder of fact. And so we're arguing that his adjudication for Count Two should be vacated and that his case should be remanded for a new adjudication once the 11510 evidence was not considered. The state, as I said earlier, and I'm moving on to the sentencing argument, probation conditions, the state has conceded that argument or that the Count One needs to be vacated, the adjudication for Count One needs to be vacated. Now, the court never entered a sentence as to Count Two. There's no existing sentences to Count Two. So that count needs to be sent back for a new sentencing hearing. But some of the arguments that are present in the brief should still be considered regarding the probation conditions, albeit that these are things that the court may consider below, again, during the resentencing proceeding. Because really of two things. One, in the interest of judicial economy, it makes sense for this court to consider those arguments so that they are not going to be repeated again once this case is remanded. But two, as I note in the brief, O.M. was sentenced using a sentencing order that was generally reserved for adult sex offenders, a sentencing order that wasn't tailored towards juveniles. And we know that there are different considerations that come into play when you're sentencing a juvenile than when you're sentencing an adult. So for those reasons, I'd like to briefly discuss some of the probation condition arguments that we've included in our brief. And in doing so, you understand it would be, if the court accepts your argument that resentencing is necessary, that that would be done before a different judge here. And the state has made certain concessions in its brief. That's correct. Part of my concern is I don't know if this is a standard sentencing form that they're using for juvenile offenders in Vermillion County. If it is, it is something that, at least in my opinion, should be addressed to make sure that when this case goes back down, the correct sentencing order is used. Or at least if this sentencing order is used again, there are modifications to it to reflect that you're sentencing a juvenile here. You're not sentencing an adult. And with the considerations for those two groups being so diametrically opposed at times, it's important that this court give the lower court an idea of what it is allowed to do and what it is not permitted to do. Well, concerning the arguments I think you're about to make, were any of them ever presented to the trial court? None of them were, no. And that's why they're being raised as plain error in this case. Because many of the arguments, you know, sentencing for juveniles is governed by this idea that they must relate to the nature of the offense and the rehabilitation of the minor. And under the first prong of plain error, there's really no closeness of evidence here, because many of the probation conditions have nothing to do with those two things. The court doesn't make any findings with a lot of these arguments regarding why it's sentencing the defendant to these things, why these things are necessary. For instance, the prohibition on the defendant's access to the Internet. This is a juvenile who is going to be looking for a job at some point. Children nowadays are linked by social media. What you don't want to do is take this child, this juvenile, and essentially put a scarlet A on him and say, no, you have to treat him like a leper and put him away, and say, no, you can't associate with kids your same age. You can't communicate with them. You can't, you know, apply for a job on the Internet, because those things remove him from society and don't do anything to further his rehabilitation in this case. And that's exactly the effect that the sentencing order would have. So you're thinking maybe this is a standard order in sex cases? Yes, in adult sex cases. At least that's the way, during the sentencing proceedings, when they got to the portion where the judge was going to be sentencing him, he actually paused the proceedings and asked for, I don't remember the exact terminology, but he asked for, it was like an adult sex offender probation form or a sex offender probation form or something like that. But his verbiage makes me think that it's not commonplace, maybe in Vermillion County, for them to sentence juveniles to juvenile-specific sex offender probation. And I want to make sure that that same mistake isn't repeated once this case is remanded, if this court disagrees with the 11510 argument, for resentencing on Count 2. We also have the provision that he can't, well, as to the Internet provision, it's to his access to the Internet, and there's no mental state required. So that is subject to him innocently violating that condition and therefore having his probation revoked based on him committing an act that he has no idea he's even committing. For example, some colleges now only accept online applications. Correct. And I used the example in the brief. If he goes to the library and sits down to look up a library book, even though he's just looking up a library book, I'm willing to bet that that computer might have Internet access to it. And if it does, and he does that, he's violated the terms of his probation. There's no mental state required. There's no devious intent required. It's almost a strict liability offense. The same thing can be said for his possession of a cellular telephone, even though this offense, like the Internet provision, had nothing to do with that. He wasn't looking at, you know, pictures of KB on the Internet. He wasn't looking at pornography on the Internet. Similarly, he wasn't using a video phone or taking still images using a cellular phone in this case. It has nothing to do with the nature of the offense for which he has been sentenced. But there are other, I guess, maybe more interesting arguments in this case. Well, counsel, I want to be clear about something. Yes. Your argument in regards to resentencing relates only to count two, which you said the court did not sentence him. Correct. So you're saying we should provide guidance based on perceived errors in court sentencing on count one. Is that right? Because the trial court sentenced him on count one. So, okay, the court sentenced him on count one. The state has agreed that that count needs to be vacated. So as a result, there's no current valid sentence in this case because the court explicitly said it was not entering sentence on count two. So you're saying we should be providing guidance to the trial court for sentencing in count two, a count which it did not sentence the juvenile on previously, cleaning what we perceive to be potential mistakes that might be made in sentencing on a charge that wasn't sentenced originally? Given the fact, and I understand the reluctance. Again, though, I think that it's important in this case, given the fact that the court didn't bat an eye at sentencing this juvenile to an adult sex offender probation. To a provision that really, many of them had nothing to do with rehabilitating him or protecting the public. Things that had absolutely nothing to do with his offense. And I want to ensure that this is not something that regularly happens in Vermillion County. Because if it is, when this court sends the case back down, this same thing or similar thing is going to happen again and you're going to see me back after making the same argument. And if we can kind of nip that in the bud by directing the lower court that upon resentencing, to be aware that this is a juvenile and sentence him accordingly pursuant to the Juvenile Court Act. I think that's a matter of judicial efficiency that frankly makes a lot of sense in the instant case. The court, for example, also banned O.M. from having any relationship or giving him access to minors. I don't even know what that means. And maybe that's a part of my hesitancy to just have this court send it back down without any direction. I've been an attorney for a while. If I can't interpret what this provision means in this probation order, I don't know how my juvenile client can. I don't know how he can understand what conduct on his part is prohibited and what is allowed. It's arguments like this or errors like this that I'm concerned that when this court sends it back are just going to be made again. And so I would simply ask this court to make a comment in the order of opinion if, again, if the court disagrees with argument two and finds that sentencing is mandated here on count two, that the court is to be aware that this is a juvenile that they're sentencing and he should be sentenced pursuant to the Juvenile Court Act. This court has no further questions? Thank you. We'll have rebuttal. Mr. Manchin. May it please the court, counsel, with respect to the admissibility of the victim's statements, we have here a trial court in a five-page, it's actually an 11-page statement where he makes findings both as to the proof of the guilt and findings regarding the pretrial statements. The trial court goes in great detail examining every one of the factors the defendant or respondent I should say makes here regarding timing, consistency, inconsistency, language, whether the questioning was improper. If you read the defendant's brief on appeal and read the argument in the trial court, they're virtually identical. What the respondent is asking this court to do is to substitute its judgment for the trial court that was there and heard the witnesses and determined that there was adequate indicative reliability to admit these statements. The standard to review for 11510 statements was the trial court's decision and abuse of discretion. Abuse of discretion is defined as arbitrary, unreasonable, such that no reasonable man would agree with the decision of the trial court. Where reasonable minds could disagree as to whether or not the trial court's ruling was correct, that is not an abuse of discretion. And I submit that the trial court's appraisal of the facts of this case and determination that the child's statement was reliable was amply justified based upon the evidence here. The inconsistencies were minor and I submit that if they were identical, the argument now would be that the child can't be believed because it's too down pat. The questioning by the officer, the trial court expressly found on page, I believe it's page 76 of the record, 77, that the officer used proper questioning in his interviewing of the child. So the accusation that he was being led down the primrose path that accused the respondent is simply not borne out by the testimony or by the tape recording of that conversation between the child and the officer. And if you look at that tape, the child's body language is also very telling and the trial court referred to that as far as the moment you have a very lively child, but the moment he starts talking about this, he suddenly clenches in on himself. The trial court relied upon that as well as finding, indicating reliability. The only leading questions that were asked by the officer was when the child made a statement regarding what was happened and the statement was either largely unintelligible on the tape or the officer was trying to clarify exactly what the child had said. He never asked what did he do with your private parts until after a statement was made that something happened and he was just clarifying what it was that the child was reporting at that time. That is not so leading as to make the statements unreliable. Counsel, do you agree that the victim reported different kinds of sexual conduct depending upon who the victim was talking to? In the statement to his mother, he reported two different kinds of conduct regarding whether it was actual penetration or whether he tried to penetrate as far as anal sex. With the officer, if I recall correctly, he did add the allegation as to the oral sex, but the time frame for the allegations as to what happened with the respondent remained the same. It all happened on the night of the rehearsal dinner as they were returning to the rehearsal dinner where they were parked near the rehearsal dinner near where the animals were located and the description of the place he was parked was very consistent, was very pointed to the exact same spot basically. So we're not having a very vast difference in accusations as to what happened. There's not an accusation that said he just touched me on the butt. Well, did he specify the sexual conduct or did he just say sexual conduct? He did specify when he was speaking to his mom. He told her... No, no. Count two as charged in the charging instrument. Did it specify the sexual conduct and does that matter if it didn't? I honestly don't recall, Your Honor. And I think as far as sexual contact goes that proof of either oral or anal touching would be sufficient for that charge. But I don't recall how it was exactly phrased. Well, assume for a second it just said sexual conduct and did not specify what the sexual conduct was. Is there anything in the record to indicate that the respondent asked for a bill of particulars or objected to the charging instrument? No. There was nothing like that, no, Your Honor. And the respondent's complaint about the use of the statement at trial  Now, the case law is clear that you cannot use the victim's testimony at trial to say the trial court erred in admitting his pretrial statements unless that testimony was being relied upon by the trial court to make its initial determination as to the reliability of the out-of-court statements. You look just to what the trial court considered at the 11510 hearing to determine, okay, was it correct? And you cannot consider what the child testifies to at trial to say, no, the court was wrong as far as his 11510 reliability determinations. The child's performance at trial is the precise reason the legislature adopted 11510. They wanted to avoid the situation where you have a child who has made reports of a sexual offense, then gets to trial, and is unable to testify fully as to what happened or, as is this case, cannot remember some of the details or that kind of thing, and that they still have the evidence available to present. That was the exact purpose of 11510. I submit that the trial court's determination in this regard was not an abuse of discretion and should not be disturbed by this court. With regards to the respondent's challenges to the conditions of probation, none of them were made in the trial court, and the first time any mention of plain error was made today during this argument. So I think that any objection has simply been waived. The place to make these contentions that, hey, these terms with the legislature specifically adopted for adult sex offenders, it is not unreasonable for the trial court to put them on a juvenile. There is no evidence presented to the trial court, and none presented to this court even, that says that these types of conditions of probation are appropriate only for adults but not for children. The two articles respondent relies upon in his brief regarding saying, hey, you can't put the restrictions on juveniles to be different than adults, said absolutely nothing regarding restrictions on Internet use, computer use, or any of these that are included in this thing. The one just simply stated that, one was an article that refers to, just simply says that juveniles should not be included in sexual offense registries. Has nothing to do with the issue here. The other one was saying that you need to have a sliding scale type arrangement in, or progressive type arrangement in probation terms regarding minors. But again, it says nothing about these type of restrictions. I think that the trial court's use of them was reasonable. They have been approved by the, especially approved by the legislature for use with sex offenders, as being appropriate for protecting the public and for assisting in rehabilitation. There is no reason that the trial court cannot adopt those for a juvenile offender. And in this case, while these conditions are not directly related to the respondent's conduct or his offense itself, it is related to the respondent and to his rehabilitation. There is a sexual offender's evaluation that was done. Could he play basketball on a playground with a 16-year-old, based on the probation provision that was imposed on the sentence, that the adjudication was vacated? I don't know. I don't believe so. And what does that have to do with allegedly taking advantage of an 8-year-old? In a private space. That one, probably nothing. As far as the relationships one, that could probably be better phrased or tailored. That would restrict him from playing sports at school, competitive sports, because he might be on a team with people, he might be 16 or 17, and somebody on the team with him could be 16. Again, that is something that can be addressed when this case is remanded for resensing on the count two, rather than talking in hypotheticals as to what might happen or what could happen. It's a question that this court should not address until we actually have an actual controversy in front of you, where the trial court has had the opportunity to, okay, let's flesh out these terms so that they more directly apply. But I was just referring to the terms regarding internet limitations and that kind of thing, that that is and can be related to this respondent and his rehabilitation. If you look at his evaluation, it indicates that he's had, I believe, 10 underage sexual encounters and met at least one of his partners through the internet, and the evaluation also said that he should have absolutely no contact with pornography through any kind of media, DVD, video, cell phone, or the like. So the restrictions regarding computer or cell phone and that is related to the respondent so that they should not be thrown out as being unrelated as continued by a respondent. Are you conceding that the case needs to be remanded to the trial court for sentencing on count two? Well, since the trial court never imposed sentencing on count two, it will have to be sent back for that. So that really any questions regarding the terms that were imposed the first time around are really moot, that the time to hammer out these kind of issues is in the trial court, or when this comes back after a full record is developed as to why the court thinks these particular restrictions are appropriate for this particular respondent. Are there no further questions? Seeing none, thank you. Any rebuttal? Just as a note, Your Honors, on pages 16, 17, 18, going on to the top of page 19 of the reply brief, I discussed plain error regarding the sentencing issues. So it has been raised prior to oral argument today, contrary to the State's position here. The State, when talking about the admissibility of the 11510 statement, talked about the court's findings and the videotape of the KB's statement to Boland. What the State didn't talk about was its complete failure to, in any way, establish that KB's mother didn't influence the statement that he ultimately gave to her and to Officer Boland. That is a void that we have here in this case. The trial court didn't have that information either. What the difference is to me is we don't know if she walked into that room and KB gave a narrative answer of, Mom, this is what happened to me, and she let him talk for three or four minutes. If that was the case, that might be more reliable than if she walked in there and said, Your stepsister told me that this happened. Okay, well, did he put his mouth on your penis, right? Yeah. Well, then what, did he put it in your butt? Yeah, he did that too. And did that hurt? Yeah, that really hurt. That renders a big difference in this case because the mom can still come out of that interview with her son and say, He told me there was oral sex. He told me there was anal sex. He told me it hurt. But those things were all a product of these leading questions that she asked of him, where she pulled that information out of him. It's the same information, but the way that you come to gather that information is critically important, especially in a case like this where you have an eight-year-old making the allegation. And as I believe Justice Turner pointed out, these aren't just little inconsistencies that are floating around here. They are serious sexual acts that he tells one person, Yes, that happened. He tells somebody else, No, it didn't. Now, the state says that you can't look at the testimony given by KB at the adjudication when you're analyzing the admissibility of the 11510 statement. And there is some precedent to back up that argument. But the problem is when the court was making its credibility determination, it didn't say, Based on what I've seen today here at trial, I find OM and his mom to be not credible at all, and I find KB to be credible. That's not what happened. The court looked at the 11510 statements, looked at KB's mom's statement, Officer Boland's statement, his stepsister's statement, KB's various statements, and based on all of those statements found that KB was credible. Without knowing how those statements originated. Without the state even attempting to prove that KB's mother didn't influence those statements in some way. Contrary to this court's decision in Simpkins. This is a significant problem with this case, and one that the state still can't explain away. It can point at the standard of review as abuse of discretion.  It is abuse of discretion. But still, you also can't ignore the fact that this was information that the court didn't have when it decided that KB was more credible than OM and his mother. Information that the court should have required under this court's precedent before making that determination. So I would ask this court to... I have one question. Yes. And this would relate to sentencing possibly if it were to go back. Mr. Manson made reference to 10 encounters. One of which came about via the internet. How did that evidence come in? It was in an adult context. It would be called the pre-sentence investigation report. If my memory serves, I could be wrong about that. I don't remember that that came via internet. I remember that there was an allegation that a woman had sent the respondent an unsolicited nude photo that he immediately deleted. Okay, but how about the 10 encounters? I don't remember if there were 10. He did profess to have intimate relations with several other people. I don't remember how many. I don't remember ages. Okay. But there was that in the record. Thank you. So I would ask that his adjudication be reversed, that his case be remanded. Or alternatively, if this court disagrees, that his case be remanded for resentencing and that he be sentenced only to appropriate juvenile-specific probation conditions. Okay. Thank you. Thanks to both of you. The case is admitted. The court stands in recess until further call.